Territory v. Nakamura, 20 Haw. 222.

# TERRITORY OF HAWAII v. NAKAMURA, TABATA, YOSIHARA, MASU, SATO, FUGI, FUKUDA, YAMASAKI, KAMI, UEKI, ISHIMURA, ISHIONA, YONAKIDI AND IWAMOTO.

EXCEPTIONS FROM CIRCUIT COURT, FIRST CIRCUIT.

ARGUED AUGUST 31, 1910.                DECIDED SEPTEMBER 6, 1910.

PERRY AND DE BOLT, JJ., AND CIRCUIT JUDGE ROBINSON IN PLACE OF HARTWELL, C.J.

NEW TRIAL—*exhibition of dice not connected with case.*

Defendants were charged with being present at a place where a gambling game was being played. The evidence and claim of the prosecution was that the game was one played with cards. During the presentation of the case for the Territory, the prosecuting officer permitted certain dice, concerning which no evidence was adduced, to remain on a table in the court-room within view of the jury. Held, not a ground for a new trial.

EVIDENCE—*sufficient to support verdict.*

The evidence in the case held sufficient to support the verdict.

OPINION OF THE COURT BY PERRY, J.

The record does not disclose the precise language of the charge against the appellants. Apparently it was, in substance, that they, with two others, were present on a day named at a place where a game at which money was lost and won was being played. The trial was before a jury. Two of the original defendants were acquitted. The fourteen who were convicted bring the case to this court, the only exceptions being that the verdict is contrary to the law and to the evidence and that the prosecution improperly permitted to be exhibited on a table in the court-room during the progress of a part of the trial seven dice concerning which no testimony whatever was given in the case.

McDuffie, the officer who was in charge at the time of the arrest of the defendants, testified in effect, inter alia, that with

four other officers he had made the raid in question, at half-past one in the afternoon on the day named in the charge; that on approaching. the room where the game is claimed to have been carried on he looked for about a minute through a knot-hole in the outer wall and by that means saw three or four men seated on or near a bunk in the room holding cards in their hands, and that he also saw one of the men pass money, either a fifty-cent piece or a twenty-five-cent piece, to another of those holding cards; that with some of the other officers he then went into the room and arrested all of the sixteen defendants. There was other evidence tending to show that the room was fourteen feet in width by twenty-four feet in length; that about its center stood an ordinary billiard table and that the bunk referred to was at the end of the room nearest the knot-hole. Testimony adduced by the defendants themselves was to the effect that all of the defendants were present in the room at the time of and immediately preceding the arrest and that five or six of them were seated on or near the bunk. Kellett, one of the officers, testified that on reaching the house he took a position at a certain opening on the westerly side of the house and from that point saw five or six men at the bunk, saw cards dealt to them and saw some of them place money (silver dollars) on their cards; that at this juncture McDuffie entered and made the arrest, and that at. the time of the arrest two of the defendants admitted to him that they had been playing fuchikau (a Japanese gambling game). There was also testimony descriptive of the game of fuchikau.

The defendants' claim on the exceptions is that there were grave contradictions between the evidence of McDuffie and that of Kellett and between different parts of the testimony of Kellett; that, as testified to by witnesses for the defense, it was a physical impossibility for either McDuffie or Kellett to have seen from the positions and through the openings de-

scribed by them the things which they said they saw, and that the jury should have disregarded all of this evidence as unworthy of credence. Whether the jury reconciled the evidence of McDuffie with that of Kellett on the theory that McDuffie saw the end of one game and Kellett the beginning of another, or whether it disregarded in the main the evidence of one of these witnesses and accepted that of the other does not appear, but it was at liberty to follow either course. It is within the province of the jury alone to pass upon the credibility of the witnesses and the weight of their evidence, and if the jury in this case was able to reconcile the evidence of the two witnesses referred to, or, while disregarding the testimony of one, accepted as true the essential parts of the testimony of the other, the conclusion so reached cannot be disturbed by this court. The same is true of the conflict between the testimony of witnesses for the prosecution and that of those for the defense as to the possibility of seeing through the knot-hole or through the westerly opening to the extent claimed.

It is not necessary in order to sustain a conviction that any witness should say specifically that the money was passed as a part of the gambling game. The circumstances testified to were such as to justify reasonable men in finding that the money was so passed and was not in payment of an ordinary obligation.

The fact that the dice were in the view of the jury during the earlier part of the trial was not complained of or called to the court's attention until the close of the case for the prosecution, at which time their exhibition was made one of the grounds of a motion for a directed verdict. The dice were then removed from view. The testimony for the prosecution related solely to a game played with cards. There was no evidence or claim of the use of dice in the game. Under all of the circumstances of the case it would be an unwarranted re-

flection on the intelligence of the jurors to hold that they were in any degree prejudiced in their consideration of the case by the view which they had of the dice on the table.

The exceptions are overruled.

*J. W. Cathcart, City and County Attorney,* for the Territory.

*J. Lightfoot* for defendants.